THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| COLORADO CASUALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>STARLINE WINDOWS, INC., et al.,<br><br>Defendants. | CASE NO. C12-2218-JCC<br><br>ORDER |

This matter comes before the Court on Defendant's motion for summary judgment (Dkt. No. 45) and Plaintiff's cross-motion for summary judgment (Dkt. No. 62). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part Defendant's motion (Dkt. No. 45) and GRANTS in part Plaintiff's cross-motion (Dkt. No. 62) for the reasons explained herein.

I. BACKGROUND

This case arises out of defective windows that Defendant Starline Windows, Inc. ("Starline") supplied to The Bristol Apartments, which are owned by The Bristol at Southport, LLC ("Bristol"). (Dkt. No. 87 at 2.) In late 2001, the Starline windows began leaking. (Dkt. No. 45 at 5.) In early 2002, Starline performed repair work on the windows. Bristol apparently believed the problems were fixed. In 2010, however, Bristol discovered the windows had been allowing water intrusion since 2001 and there was widespread damage. (Dkt. No. 45 at 6.)

In June 2011 Bristol sued Starline in state court, claiming that it suffered damage and losses due to the defective windows that were covered by a Starline warranty. (Dkt. No. 87 at 3.) *See The Bristol at Southport, LLC v. Starline Windows, Inc.*, King County Superior Court Cause No. 11-2-21741-8 SEA ("the Bristol suit"). Bristol also filed suit against two related entities, Starline Windows Ltd. ("LTD") and Starline Windows (2001) Ltd. ("Starline 2001"), in an action that was removed to the United States District Court for the Western District of Washington. *See The Bristol at Southport, LLC v. Starline Windows Ltd. and Starline Windows 2001 Ltd.*, C12-2089-RSL (W.D. Wash.). LTD was the entity named on the warranty (Dkt. No. 48-2 at 10), although some evidence suggests this may have been an error (Dkt. No. 70-2).[1]

Plaintiff Colorado Casualty Insurance Company ("Colorado") is an insurer for Starline. Colorado issued two policies to Starline: Policy CPP 0281583-01, a general liability policy effective 5/20/2001 to 5/20/2002 (Dkt. No. 87-3); and Policy CUP 4601144-01, an umbrella policy effective 9/14/2001 to 5/20/2002 (Dkt. No. 87-6) ("the Colorado policies"). On July 27, 2011, Starline tendered its defense in the Bristol suit to Colorado, arguing that the Colorado policies covered the claims asserted in the Bristol suit. (Dkt. No. 87 at 4.) Colorado accepted Starline's tender under a reservation of rights. (Dkt. No. 87-2).

Colorado filed this action in December 2012 seeking a declaratory judgment that it has no duty to pay any judgment against Starline in the Bristol suit. (Dkt. No. 1.) In February 2013, Starline entered into a settlement agreement with Bristol, LTD, Starline 2001, and Royal & Sun Alliance Insurance Company of Canada ("RSA"), which issued liability policies to LTD and Starline 2001. (Dkt. No. 87 at 5–6; Dkt. No. 45 at 2.) Four liability insurers for Starline also participated in the settlement or reached settlements with Bristol shortly thereafter. (Dkt. No. 87

---

[1] In its reply brief, Colorado requests to strike testimony suggesting that the warranty may have listed the wrong entity. (Dkt. No. 73 at 3.) Although agreeing with Colorado's general point that witnesses must have knowledge, the Court is not convinced that that the cited transcript portions are as conclusive as Colorado suggests, and the Court does not rely on this testimony in its discussion regardless.

ORDER
PAGE - 2

at 5–6; Dkt. No. 45 at 2.) These insurers, along with RSA, are known as the ―Settling Insurers.‖

Colorado Casualty‗s Second Amended Complaint names as defendants Starline, Bristol, and RSA. (Dkt. No. 87.) Colorado seeks a declaratory judgment affirming that the Colorado policies do not cover any claims in the Bristol suit and that Colorado need not pay any amounts awarded against Starline in that suit. (Dkt. No. 87 at 7.) Colorado also requests a determination about the priority of coverage between the RSA and Colorado policies, a judgment against RSA for Colorado‗s costs in defending Starline, and reasonable costs and attorneys fees. (Dkt. No. 87 at 8.)

Defendants seek summary judgment on two issues: first, that Colorado is not excess to any applicable RSA policy; and second, that Colorado cannot seek contribution from the Settling Insurers. (Dkt. No. 45 at 3.) Colorado‗s cross-motion seeks summary judgment on whether it is primary to the RSA policies, and on the defendants‗ bad-faith and CPA claims, which were included in Defendants‗ Answer. (Dkt. No. 62 at 26.)

## II. DISCUSSION

### A. Standard on Summary Judgment

―The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.‖ Fed. R. Civ. P. 56(a). Material facts are those that may affect the case‗s outcome. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if there is enough evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* at 49. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party, and all justifiable inferences must be drawn in the nonmovant‗s favor. *See Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 960 (9th Cir. 2011).

### B. Applicable law

Defendant RSA argues that the law of British Columbia applies. (Dkt. No. 53 at 2.) This case is in federal court based on diversity jurisdiction, so the Court applies Washington‗s choice-

of-law rules. *See Coneff v. AT&T Corp.*, 673 F.3d 1155, 1161 (9th Cir. 2012). Under Washington law, courts engage in a choice-of-law analysis only if there is an actual conflict between the laws of the relevant jurisdictions. *See Burnside v. Simpson Paper Co.*, 864 P.2d 937, 942 (1994). Absent a conflict, the local law of the forum applies. *See id.*

RSA does not argue that there is an actual conflict between the laws of Washington and British Columbia. To the contrary, it states that "application of British Columbia law works no different a result than that advocated by Defendants' motion even though the latter is based upon Washington law." (Dkt. No. 53 at 3.) RSA describes how the laws of both British Columbia and Washington treat other-insurance clauses in insurance policies in similar manners. (Dkt. No. 53 at 4.) There is no conflict so the Court applies Washington law.[2]

### C. Types of insurance clauses

Insurance policies generally have clauses which explain the policy's relationship to any other insurance policies covering losses by the insured entity. For example, Pro-Rata Clauses state that any loss covered by the policy will be split with other insurers on a pro-rata basis. An Excess Clause, by contrast, "provide[s] that an insurer will pay a loss only after other available primary insurance is exhausted." *New Hampshire Indem. Co., Inc. v. Budget Rent-A-Car*, 64 P.3d 1239, 1241 n.2 (Wash. 2003). Policies with Excess Clauses are generally excess to policies with Pro-Rata Clauses. *Id.* at 1243. A Super Escape Clause states that the policy is excess over all other insurance, meaning that the policy "will not apply to any liability for loss that is covered by primary, excess, contributory, or any other basis by other insurance." *See id.* at 1241 n.2.

### D. Who manufactured the windows

The parties disagree about whether LTD or Starline 2001 manufactured the windows. Because RSA issued policies to both entities, the identity of the manufacturer will determine which RSA policies are relevant.

---

[2] Even if the Court engaged in a choice-of-law analysis, it appears likely that Washington law would apply.

Defendants argue that Starline 2001 was the manufacturer and state that "LTD was not involved in manufacture of any windows for the Project." (Dkt. No. 45 at 7.) For support, Defendants cite (1) a copy of the February 28, 2013, settlement agreement, which states that "Starline Windows (2001) Ltd. manufactured the windows supplied by [Starline] to Bristol," (Dkt. No. 46-3 at 1), and (2) the declaration of Pat Downey, who was the project coordinator for Starline. (Dkt. No. 47 at 2.)

Colorado, however, notes that the windows were delivered in January, May, and August of 2001. (Dkt. No. 58 at 7.) These dates are undisputed. (Dkt. No. 45 at 4.) Starline 2001 was not incorporated until November 22, 2001. (Dkt. No. 58 at 7–8.) Colorado has produced certified copies of Starline 2001's incorporation documents, and an affidavit from a paralegal describing the process that Colorado's counsel is currently undergoing to obtain a "final certification" of the Canadian incorporation documents. (Dkt. No. 59.) *See* Fed. R. Evid. 902(3) (certified foreign public documents are self-authenticating when accompanied by a final certification that certifies the genuineness of the signature).

Defendants do not contest the validity or relevance of the incorporation documents. Instead, they suggest that the documents merely create a question of fact because "Colorado has put in evidence that [Starline 2001] may not have been incorporated until after the windows for the Project were delivered." (Dkt. No. 68 at 11.) Defendants do not suggest that Starline 2001 was incorporated on some other day, and neither the settlement agreement nor the Downey declaration contradict the date of incorporation for Starline 2001. There is simply no evidence contradicting the incorporation date. The Court concludes there is no question of fact about the date of incorporation, so Starline 2001 could not have been the manufacturer. The Court therefore grants summary judgment with respect to LTD being the manufacturer of the windows.

Defendants later argue that the manufacturer is irrelevant because Bristol already has a judgment against Starline, and the settlement agreement released LTD and RSA. (Dkt. No. 68 at 4.) As the Court understands this argument, Defendant is suggesting that because other parties

settled, Colorado is precluded from making any argument about Starline's coverage under its other insurance policies. But the Court disagrees that the settlement, which did not involve Colorado, has such a far-reaching effect.

### E. Relevant RSA policies

RSA issued a number of potentially relevant insurance policies. (Dkt. No. 45 at 11–12.) Colorado, however, argues that only three are relevant. (Dkt. No. 62 at 11 (identifying three policies with coverage periods overlapping with the coverage periods of the Colorado policies).)

One of these three policies—Policy 60431984/A, effective from 1/02/02 to 1/02/03—was issued to Starline 2001. (Dkt. No. 48-6 at 11.) This policy included a super-escape clause. (Dkt. No. 48-6 at 13 (describing the policy as excess to any ―valid and collectible insurance whatsoever" that is available to the Insured for any covered loss). The Court agrees with Defendants that it is therefore excess to the Colorado policies and GRANTS summary judgment accordingly. *See New Hampshire Indem. Co.*, 64 P.3d at 1242 (Wash. 2003) (super-escape clause means that a policy's coverage becomes available only after coverage under an excess clause is exhausted).

A second of these three policies may have included a super-escape clause, which appears in a form produced by Defendants in a supplemental production. (Dkt. No. 68 at 3.) Colorado argues that there is no evidence that this form was part of the policy. (Dkt. No. 73 at 4.) The Court agrees that this document—appearing for the first time as an attachment to an October 4, 2013, letter with no accompanying context—does not establish for the purposes of summary judgment whether or not the policy included a super-escape clause. If it does contain a super-escape clause, it is excess to the Colorado policies. If it does not contain a super-escape clause, then the Court's reasoning in the next section about the effect of the vendors endorsement will apply. But the question cannot be decided on summary judgment.

Colorado does not argue that any other RSA policies are relevant, and Defendants persuasively argue that the Colorado policies are excess to no other RSA policies. (Dkt. No. 45

at 11–12.) The Court therefore concludes that Colorado's policy is excess to no RSA policy other than, possibly, those referred to 00-LTD and 01-LTD and discussed below. The Court GRANTS summary judgment accordingly.

### F. Broad Form Vendors Endorsement

Colorado argues that, under the terms of its policy, it is excess to certain RSA policies issued to LTD. Because RSA policy limits were not exhausted by the settlement, Colorado has no coverage obligation. (Dkt. No. 58 at 11.) The argument proceeds as follows. First, Colorado points to its policy provision which states that the policy "is excess over . . . [a]ny other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement." (Dkt. No. 48-7 at 4, IV.4.b.(2)).

Next, Colorado looks to the RSA policies. There are a number of RSA policies but, for purposes of this argument, Colorado looks only to two policies, both of which were issued to LTD and contain a Broad Form Vendors Endorsement. This endorsement states:

> This insurance is extended to include any person or organization as an insured but only with respect to the distribution or sale in the regular course of the vendor's business of the Named Insured's products subject to the following additional exclusions:
>
> 1. This insurance with respect to the vendor does not apply to:
>    a. Any express warranty unauthorized by the Named Insured.
>    b. "bodily injury" or "property damage" arising out of:
>       i. any physical or chemical change in the form of the product made intentionally by the vendor;
>       ii. repacking, unless unpacked solely for the purpose of inspection, demonstration, testing or the substitution of parts under the Named Insured's instruction and then repacked in the original container;
>       iii. demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product; or
>       iv. products which after distribution or sale by the Named Insured have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

> 2. This insurance does not apply to any person or organization as insured from whom the Named Insured has acquired such products or any ingredient part or container, entering into, accompanying or containing such products.

Dkt. No. 48-6 at 5.

Colorado argues that that Starline is an "additional insured" for purposes of this language, because Starline distributed windows manufactured by LTD and was sued for supplying defectively manufactured windows. (Dkt. No. 62 at 15.) Because the two relevant RSA policies completely overlap the period of the relevant Colorado policy,[3] the Colorado policy is therefore excess. (*Id.* at 14.)

Defendants make several arguments in opposition. First, they cite the Additional Insured Extension for the relevant policies, which provides that "name(s) as shown on the 'Coverage Summary' is or are added as additional insured(s)." (Dkt. No. 68 at 6.) A subsequent provision provides that "Except as otherwise provided in this Form, all terms, provisions and conditions of the Policy shall have full force and effect." (*Id.*) Thus, Defendants argue that the only way that an entity may be an "Additional Insured" under the RSA policies is if it is listed in the Coverage Summary. (*Id.* at 7.) Because Starline is not so listed, it is not an "additional insured" for purposes of the Colorado policies.

The Court is unconvinced. Nothing about the provision's plain language suggests that the Additional Insured Extension is the only method by which an entity can become an additional insured for purposes of determining whether it is covered under Colorado's policy. The existence of different forms for the Broad Form Vendors Endorsement and for the Additional Insured Extension does not mean that an entity insured under the former is necessarily not an "additional insured." Neither does it create any ambiguity. (Dkt. No. 63 at 6.) There are at least some instances in which similar vendors endorsements have been treated as granting an entity

---

[3] As the Court noted above, there is a question of fact about whether the second policy may have included a super-escape clause.

ORDER
PAGE - 8

additional-insured status. *See also Industrial Chem. & Fiberglass Corp. v. North River Ins. Co.*, 908 F.2d 825, 830 (11th Cir. 1990) (policy providing coverage to "any additional insured" in an underlying policy provided coverage for a vendor covered by a vendors endorsement). And entities covered under vendors endorsements are frequently referred to as "additional insureds." *See, e.g., Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 340 (5th Cir. 2008); *United Rentals, Inc. v. Genie Industries, Inc.*, C06-1109-RPM, 2010 WL 2541127 at *1 (D. Colo. June 18, 2010) (unpublished).

Even if Starline is an "additional insured," it may still be excluded from coverage by the endorsement's exclusions. The three potentially relevant exclusions exclude coverage for "property damage arising out of":

    i. repacking, unless unpacked solely for the purpose of inspection, demonstration, testing or the substitution of parts under the Named Insured's instruction and then repacked in the original container;
    ii. demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product; or
    iii. products which after distribution or sale by the Named Insured have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

Dkt. No. 48-6 at 5. Defendants argue that these exclusions mean that only vendors who sell products "off the rack" are insured. (Dkt. No. 63 (citing *Travelers Ins. Co. v. Freightliner Corp.*, 628 N.E.2d 325 (1993).) But this is too simplistic a reading. The provision excludes coverage for losses caused by "property damage arising out of" a number of activities. The mere fact that a product was repacked or repaired does not entirely negate the effect of the exclusion. Instead, any damage "arising out of" that repacking or repairing will be excluded. *See Weaver*, 529 F.3d at 342 (recognizing that the "majority position" requires a "nexus between the alteration and the injury"); *Sears, Roebuck and Co. v. Reliance Ins. Co.*, 654 F.2d 494, 497–98 (7th Cir. 1981) (examining a similar provision and concluding that, even though fabric had been "changed" and

"repacked," the alleged injury "arose out of" the fabric itself, not the changing or repacking, so was not excluded).

Defendants rightly note that Starline performed extensive servicing work on the windows, potentially providing just such a nexus and implicating these exclusions. (Dkt. No. 63 at 7–8.) The windows were also installed in panelized assemblies, which may implicate the "repacking" exclusion. (Dkt. No. 45 at 5.) Defendants recognize, however, that manufacturing defects are also implicated. (Dkt. No. 63 at 8 ("Starline's supply operations and its workmanship operations are implicated, and *not merely* manufacturing defects.") (emphasis added).) For example, it appears undisputed that some damage was caused by too-short metal reinforcement bars, which were a manufacturing defect. (Dkt. No. 47 at 4; Dkt. No. 73 at 8). There may also be damage that "arose out of" the installation or repair services, but where it appears undisputed that some damage was caused by manufacturing defects, there is a question of fact about the scope of coverage.

Summary judgment is therefore inappropriate. The Court notes, however, that the extent of coverage under the RSA policies is likely limited. First, there is a question about whether the 01-LTD policy includes a super-escape clause. (Dkt. No. 68 at 3; Dkt. No. 73 at 4.) Next, only damage arising out of a manufacturing defect will be covered; damage resulting from, for example, installation errors is excluded from coverage under the RSA policies. Finally, the Court agrees with Defendants that, even if Starline is deemed to have coverage under the vendors endorsement, the Colorado policies may still provide broader coverage. (Dkt. No. 63 at 9–10.) The existence of some overlap between the policies does not necessarily eliminate Colorado's coverage obligations.

**G.    Indemnification**

In its cross-motion for summary judgment, Colorado argues that Starline is entitled to indemnity from LTD, so the loss must accrue to RSA as LTD's insurer and RSA must therefore be treated as the primary insurer. (Dkt. No. 62 at 24.) These indemnity arguments appear to

depend on the effect of the settlement agreement and its interaction with clauses in the Colorado policies. (Dkt. No. 73 at 10–11.) The Court agrees with Defendants that these arguments—raised for the first time in Colorado's Reply to its Cross-Motion—came too late to be considered on this summary-judgment motion. (Dkt. No. 80.)

### H. Right of Contribution from Settling Insurers

In its motion for summary judgment, Defendants argue: ―A a condition of settlement, Bristol agreed to indemnify the Settling Insurers from claims by Colorado. [citation omitted] Because Colorado now seeks to take advantage of these settlements by threatening contribution claims against the Settling Insurers in order to claim a right of offset for coverage under the Colorado policies, Bristol and Starline seek a ruling as a matter of law that Colorado has no right of contribution against any of the Settling Insurers." (Dkt. No. 45 at 13.)

The parties agree that Colorado has not sought ―contribution" in its complaint. (Dkt. No. 58 at 13; Dkt. No. 63 at 2.) They disagree, however, about the effect of this. Colorado argues that any consideration of a contribution bar is therefore not ripe for consideration. Defendants argue that summary judgment is therefore appropriate because Colorado ―[will not be] entitled to assert contribution claims against the Settling Insurers, including RSA." (Dkt. No. 63 at 2.)

Generally, courts have ―endorsed the practice of issuing contribution bar orders in multiparty, complex litigation contexts." *Puget Sound Energy v. Certain Underwriters at Lloyd's*, 138 P.3d 1068, 1079 (2006). As a court in this district has recognized, ―A bar order is appropriate only where the proposed settlement is reasonable and the interests of the non-settling defendants are protected." *Bank of America v. Travelers Indem. Co.*, No. C07-0322-RSL, 2009 WL 529227, at *1 (W.D. Wash. March 2, 2009) (unpublished). Defendants have not shown that either of these are true of the settlement in this litigation. There also appear to be questions of fact about when the damage occurred, which would affect any contribution rights. (Dkt. No. 58 at 14.)

Defendants do not discuss Colorado's substantive arguments. Instead, Defendants rely on

the fact that Colorado stated it had not sought contribution in its complaint and argue that summary judgment is therefore appropriate on any contribution claims against the Settling Insurers. (Dkt. No. 63 at 2.) They cite no case law for this proposition. If Colorado has not preserved an argument that it wishes to make later, that will become relevant later. In the meantime, the Court declines to grant Defendants summary judgment on a claim that Defendants now say was not included in the complaint, particularly in light of the limited evidence about the settlement.

I. **Bad-faith Claims**

Colorado seeks summary judgment on Defendants' bad-faith claims. Insurers owe policyholders a duty of good faith. *See Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1276–77 (Wash. 2003). If an insurer violates this duty then the policyholder may have a tort claim for bad faith. *See id.* "To succeed on a bad faith claim, the policyholder must show the insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded." *Id*. at 1277 (citing *Overton v. Consolidated Ins. Co.*, 38 P.3d 322 (Wash. 2002)). "Bad faith will not be found where a denial of coverage . . . is based upon a reasonable interpretation of the insurance policy." *Kirk v. Mt. Airy Ins. Co.*, 951 P.2d 1124, 1126 (Wash. 1998). An insurer's denial of coverage can be incorrect without being unreasonable. *See Wright v. Safeco Ins. Co.*, 109 P.3d 1, 10 (Wash. Ct. App. 2004).

In support of its bad-faith claims, Defendants quote from the opinion of James P. Reed, an insurance expert. Colorado has moved to strike the opinion, on the basis that he reaches legal conclusions and that there is no foundation for speculation about Colorado's knowledge or motivations. (Dkt. No. 73 at 2.) The Court agrees with Colorado that any speculation about Colorado's motives is inadmissible. *See RSUI Indem. Co., Inc. v. Vision One,* LLC, 2009 WL 5125430 at *1 (W.D. Wash. 2009) (unpublished). However, the portions of the expert report that Defendants rely on do not include speculation about Colorado's motives; they merely assert that Colorado wrongly insisted on the liability of other parties. To the extent that the description of

Colorado's actions as an "excuse" constitutes speculation about motives, the Court agrees it is impermissible. Also inadmissible are Reed's opinions about legal conclusions—for example, that Colorado's conduct constituted "a per se violation of the [CPA]" or "constitutes violations" of relevant laws. (Dkt. No. 68 at 14–15.) *See McHugh v. United Serv. Auto Ass'n*, 164 F.3d 451 (9th Cir. 1991). Reed may, however, properly opine on whether an insurer's actions deviated from the industry standards. *See, e.g., RSUI*, 2009 WL 5125420 at *2.

Even disregarding the inadmissible portions of Reed's testimony, there remain questions of fact about the bad-faith claims. Colorado claims that summary judgment is appropriate because its coverage denial was correct (Dkt. No. 62); but as discussed above, whether it was correct is unclear on summary judgment. There are also questions of fact about the basis for Colorado's belief that other insurers should assume payment of Bristol's claims. There is minimal evidence on this point before the Court. Defendants argue that Colorado shouldn't have made that decision without seeing the RSA policies, (Dkt. No. 68 at 15), yet this Court granted a motion to compel production of those policies, raising the question of whether Colorado should have been responsible for knowing their contents. It is also unclear what basis existed for Colorado's belief that Starline might be an additional insured under the RSA policies. (Dkt. No. 62 at 8 (Starline counsel in early November stated it was an additional insured under the RSA policies); Dkt. No. 68 at 14 (citing Colorado counsel's statement that "If SWI is an additional insured on those policies, as has been represented to us, then it is quite likely that he Royal coverage would be primary to any coverage provided by SWI's own insurers.") The basis for that belief and whether it was unreasonable cannot be determined on the record before the Court. The Court therefore DENIES summary judgment on the bad-faith claims.

**J.     CPA Claims**

Colorado seeks summary judgment on Defendants' CPA Claims. To prevail on a CPA claim, a claimant must show: (1) an unfair or deceptive act or practice; (2) in trade or commerce; (3) that impacts the public interest; (4) which causes injury to the party in his business or

property; and (5) which injury is causally linked to the unfair or deceptive act. *St. Paul Fire & Marine Ins. Co. v. Onvia*, 196 P.3d 664, 669 (Wash. 2008) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531 (1986)). A violation of an insurance regulation constitutes a *per se* unfair trade practice violation under the CPA. *See Osborn*, 17 P.3d at 123; *St. Paul Fire and Marine Ins. Co. v. Onvia, Inc.*, 196 P.3d 664, 667 (Wash. 2008).

Colorado provides little specific argument about the CPA violations but generally argues that summary judgment is appropriate for the same reason that it is appropriate on the bad-faith claims: because its denial was correct and not unreasonable, frivolous, or unfounded. But as discussed above in the context of the bad-faith claims, there is insufficient evidence on summary judgment to determine whether this is so. The Court therefore DENIES summary judgment on the CPA claims.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. No. 45), and Plaintiff's cross-motion for summary judgment (Dkt. No. 62) are both GRANTED in part.

DATED this 31st day of December 2013.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 14