THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| COLORADO CASUALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>STARLINE WINDOWS, INC., et al.<br><br>Defendants. | CASE NO. C12-2218-JCC<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

This matter was tried to the Court, sitting without a jury, from April 28 to April 30, 2014. Plaintiff Colorado Casualty Insurance Company ("Colorado") appeared through its attorneys Russell Love and Mark Thorsrud of Thorsrud Cane & Paulich. Defendants The Bristol at Southport, LLC ("Bristol") and Starline Windows, Inc. ("Starline") appeared through Daniel Heffernan and Brent Hardy of Heffernan Law Group PLLC. Defendant Royal & Sun Alliance Insurance Company of Canada ("RSA") appeared through its attorney Michael Ricketts of Gordon Thomas Honeywell, LLP. After bench trial and pursuant to Federal Rule of Civil Procedure 52(a), the Court makes the following findings of fact and conclusions of law:

## I.   FINDINGS OF FACT

1. Colorado is a New Hampshire corporation with its principal place of business in Boston, Massachusetts. Colorado is authorized to do business in the state of Washington.

2. Starline is a Washington corporation with its principal place of business in

FINDINGS OF FACT AND CONCLUSIONS OF LAW
PAGE - 1

1. Washington. Starline sold and serviced vinyl and aluminum windows in the western United States.

3. Bristol is a Washington limited liability company and the owner of The Bristol Apartments located in Renton, Washington ("the Project").

4. RSA is a Canadian insurance company which issued a number of liability policies to Starline Windows Ltd. ("Starline LTD") and to Starline Windows (2001) Ltd. as named insureds from 2000 to 2012.

5. Colorado issued a primary and an excess liability policy to Starline with coverage effective May 20, 2001 to May 20, 2002 under a primary policy, and coverage effective September 14, 2001 to May 20, 2002 under an excess policy (collectively, the "Colorado policies").

6. RSA issued two policies to Starline LTD that included Broad Form Vendors Endorsements. The first RSA policy covered the period December 15, 2000 to December 15, 2001 (the "00-LTD Policy"). The second policy covered the period December 15, 2001 to December 15, 2002 (the "01-LTD Policy"). The 00-LTD Policy contained a pro-rata Other Insurance clause. The 01-LTD Policy contained a super-escape Other Insurance clause. The Court credited the testimony of Katie Ewles concerning the content of the 01-LTD Policy and found Colorado's arguments to the contrary particularly unconvincing.

7. The Project was built from approximately 2000 to 2002. Certificates of Occupancy were issued for the Project in early January 2003.

8. The Project's general contractor was Mego Construction, Inc. ("Mego"). Starline contracted with Mego to furnish windows for the Project pursuant to purchase orders dated January 9, May 1, May 23, and August 24, 2001. The windows for the Project were manufactured by Starline LTD in a factory in Langley, B.C.

9. Pursuant to the purchase orders, Starline was responsible for delivering the windows to a framing plant, where the windows were unpacked and installed into prefabricated,

FINDINGS OF FACT AND CONCLUSIONS OF LAW
PAGE - 2

panelized walls for the Project. Starline was then responsible for delivering the windows to the Project jobsite.

10. The windows, installed as part of the panelized wall assemblies, were shipped flat on trucks to the Project jobsite. This method of shipping damaged the structural and waterproofing integrity of the windows. Starline used additional bracing on later shipments, which mitigated but did not prevent the damage.

11. Beginning in late 2001 and continuing into 2002—during the period of the Colorado policies—the Starline windows installed at the Project were leaking and causing water damage. At least some of the damage was caused by the structural defects resulting from the method of shipping.

12. Beginning around February 2002, Starline performed repairs to many windows at the Project. The parties incorrectly believed that these repairs were successful and had stopped the leaking. Instead, some of the work—such as cutting the glazing tape on the windows—exacerbated the problems.

13. Normally Starline issued project-specific forms of warranties, which were dated, named the project involved, and specified the type of windows covered. In this case, Starline issued a Starline Limited Ten-Year Warranty (the "Warranty"), which was a generic warranty. Starline delivered the warranty to Mego for the benefit of Bristol. Starline's business included service work on windows covered under warranties it issued, including the windows at the Project covered under the Warranty.

14. The windows continued to leak occasionally over the following years. When windows leaked, Bristol would contact Starline, which would service the windows and perform repairs under the Warranty.

15. In August 2010, Bristol discovered widespread defects in the Starline windows throughout the Project. The subsequent investigation and review of the records revealed that many of the Project's windows had been leaking since construction and there had been ongoing

water damage to the Project since that time. The leaks were caused by both manufacturing and non-manufacturing defects, and were caused in part by Starline's shipping and/or window rework operations. There was no showing at trial about the extent of leaking and water damage caused by manufacturing defects.

16. In September 2010, Bristol sent a letter notifying Starline of the damage. Bristol sent the letter to a Canadian address and to an American address and requested that Starline correct or replace the windows as required by the Warranty.

17. On June 23, 2011, Bristol filed a lawsuit against Starline in the Superior Court of the State of Washington for King County under Cause No. 11-2-21741-8 SEA ("the Bristol lawsuit"). Colorado defended Starline under a reservation of rights. Colorado sent Starline two reservation-of-rights letters, one dated March 17, 2012, and another dated November 15, 2012.

18. In the Bristol lawsuit, the window defects were generally referred to as "manufacturing defects." However, for most of the Bristol lawsuit, the distinction between "manufacturing" and "non-manufacturing" defects was not a point of contention. During the Bristol lawsuit the parties were aware of some problems that in this federal case have been referred to as "non-manufacturing defects." The Court therefore gives little weight to Plaintiff's suggestion that the parties in the Bristol lawsuit thought that the only possible source of damage was manufacturing defects introduced at the manufacturing facility.

19. In August 2012, Starline moved for summary judgment on the basis that statutes of limitations barred Bristol's claims. The trial court denied the motion.

20. Colorado and other insurers attended an unsuccessful mediation in the Bristol lawsuit on October 4, 2012.

21. On October 22, 2012, Starline made a demand to Colorado for payment of its remaining primary policy limits, which had been reduced to $744,578.87 through payments on other claims against Starline. The next day, Starline made a supplemental demand for policy limits under the Colorado primary policy, and also tendered defense and indemnity of Starline in

the Bristol lawsuit under the Colorado excess policy.

22. Colorado and other insurers attended a second unsuccessful mediation in the Bristol lawsuit on November 27, 2012.

23. Colorado was obstructive to settlement negotiations and failed to make a good-faith effort to settle Bristol's claim against Starline. Colorado lacked a reasonable basis for insisting that responsibility for Starline's liability to Bristol be assumed by others; conditioned its involvement in further mediations on receiving, well in advance, a complete copy of certain RSA policies; and made no offer to pay any amount in indemnity for Bristol's claims against Starline. The Court found Colorado's witnesses, who each testified about the settlement negotiations, not credible in their explanations regarding Colorado's actions.

24. At some point during the fall of 2012 the roles of Starline LTD and Starline Windows (2001) Ltd. came into question. Up until this point, all parties had taken for granted that Starline was responsible for the Warranty.

25. On November 29, 2012, Bristol filed a lawsuit against Starline LTD and Starline Windows (2001) Ltd. in the Superior Court of the State of Washington for King County under Cause No. 12-2-38074-1 SEA. The defendants removed that action to the United States District Court for the Western District of Washington under Cause No. 12-cv-2089-RSL.

26. Colorado filed this declaratory-judgment action on December 19, 2012, seeking a declaration that the Colorado Policies provided no coverage for Starline's liability as asserted in the Bristol lawsuit. At the time it filed this action, Colorado knew Bristol had claims against Starline of approximately $6 million under the Warranty and separately under the WPLA. Colorado amended its complaint twice, first to assert claims that RSA was primary and then to assert claims against RSA for Colorado's defense costs and attorney fees.

27. Shortly before trial of the Bristol lawsuit, Starline entered into a written settlement agreement with Bristol, Starline LTD, Starline Windows (2001) Ltd., RSA, and Maryland Casualty Company and Assurance Company of America (collectively "Zurich").

Zurich had issued liability policies of insurance to Starline as named insured from July 2002 through December 2003. Under the settlement agreement, RSA paid $1,175,000 to Bristol; Zurich paid $500,000 to Bristol; and Starline confessed judgment in favor of Bristol in the amount of $3,550,000. The court entered the Confession of Judgment and Order in the Bristol Lawsuit on May 30, 2013.

28. Allstate Insurance Company and The Burlington Insurance Company separately settled with Bristol, paying $150,000 and $175,000 respectively. These payments partially satisfied the Confession of Judgment, reducing its principal unsatisfied amount to $3,225,000.

29. The total settlement for Bristol therefore included $2 million in cash and an unsatisfied Confession of Judgment against Starline in the principal amount of $3,225,000. Bristol also obtained an assignment of Starline's rights, claims, and causes of action against Colorado arising out of the Project and the Bristol Lawsuit. In exchange, Bristol released the other settling parties and insurers, and agreed to indemnify and hold them harmless from claims by Colorado.

30. In reaching these settlements, Bristol spent approximately $500,000 on investigation costs, expert and attorney fees, and litigation expenses.

31. At the time of these settlements, Starline's potential liability to Bristol was nearly $7.3 million, which included the estimated costs of stripping and then replacing the Project's existing stucco cladding, Bristol's investigation costs, and estimated lost rental income and mitigating costs.

32. At the time of settlement, Bristol, Starline, and the other settling parties and insurers believed that Starline Windows (2001) Ltd. manufactured the windows furnished by Starline to the Project.

33. In November 2013, Bristol began a strip and reclad of the Project, replacing the original stucco cladding with Hardie panels. The Hardie recladding is less expensive and will take less time to perform than a recladding with stucco would have taken. The total costs for this

compromise repair will exceed $5.6 million, including the repair work, the investigation costs, and the lost rental income and mitigating costs.

34. The current repair work is necessary solely because of the defective and leaking Starline windows and resulting water damage to the Project.

## II. CONCLUSIONS OF LAW

*A. Jurisdiction*

1. This Court has jurisdiction under 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000.

*B. Colorado's Claims*

2. Colorado has the burden of proving its claim that the two applicable RSA policies, the 00-LTD Policy and the 01-LTD Policy, provide coverage and are primary. The evidence established that the 01-LTD Policy contains a super-escape Other Insurance clause. The 01-LTD Policy is therefore excess to Colorado's policy.

3. The 00-LTD Policy provides coverage for Starline under the Broad Form Vendors Endorsement. That endorsement provides coverage only for damage arising out of manufacturing defects. Colorado did not show that manufacturing defects were the sole cause of any damage. Colorado also provided no evidence about the extent of damage caused by the manufacturing defects. Absent such proof, Colorado has failed to meet its burden of showing the amount of any primary coverage under the 00-LTD Policy by which this Court can measure any offset or credit to which Colorado might entitled.

4. Colorado's claim that RSA is primary because Starline has a right of indemnity against Starline LTD also fails. There was no evidence of any agreement whereby Starline agreed to indemnify Starline LTD. Implied indemnity claims against a settling defendant are precluded so long as the settlement is reasonable. *See Toste v. Durham & Bates Agencies*, 67 P.3d 506, 523–24 (Wash. Ct. App. 2003).

*C. Defendants' Claims*

5. Absent proof of the amount of damage caused during a period, insurers on a risk for a period of ongoing loss and damage are jointly and severally liable for the entire loss. Defendants proved at least some damage occurred between December 15, 2001, and May 20, 2002, a time period for which there was no overlapping RSA coverage. Coverage under the Colorado Policies is therefore triggered, and Colorado is jointly and severally liable for the entire ongoing loss. The water damage to the Project is direct, physical damage so is recoverable under the Warranty and the WPLA, as are the costs for stripping and recladding the Project.

6. Both parties agree that this Court can and should determine the reasonableness of Defendants' settlements. The February 28, 2013 settlement, and the subsequent settlements with Allstate and Burlington, were reasonable under the *Chaussee* factors. *See Mut. Of Enumclaw Ins. Co. v. T&G Constr., Inc.*, 199 P.3d 376, 381 (2008). Starline's liability to Bristol for its reasonable damages exceeded the amount of the settlements. The evidence showed that Bristol's claims had merit, that considerable preparation took place over 20 months of litigation in the Bristol lawsuit, and that Starline lacked substantive defenses to the claims. The settlement terms reflected the extensive damage and the risks and expense of continued litigation, including Starline's inability to pay, except through its insurers who had not accepted coverage. There was no evidence of bad faith, collusion, or fraud in connection with the settlement.

7. Because the Court finds Defendants' settlements reasonable, the underlying Confession of Judgment's unsatisfied principal amount of $3,225,000 is the presumptive measure of the harm. *See Besel v. Viking Ins. Co.*, 49 P.3d 887, 892 (2002). Colorado failed to show that the settlement was the product of fraud or collusion.

8. Defendants also showed that Colorado acted in bad faith. The evidence, including this Court's assessment of the credibility of Colorado's witnesses, demonstrated to this Court that Colorado was obstructive to settlement of the claims against its insured, made no good-faith effort to settle Bristol's claim against Starline, never offered or agreed to pay any amount in indemnity for Bristol's claim against Starline, and failed to give equal consideration to Starline's

FINDINGS OF FACT AND CONCLUSIONS OF LAW
PAGE - 8

interests. Colorado instead put its own interests ahead of those of its insured. Colorado unreasonably attempted to avoid or limit its own coverage obligations to Starline by insisting that responsibility for the claims be assumed by others, despite lacking a reasonable basis for this assertion. Colorado also attempted in bad faith to take advantage of Starline's settlement to avoid its obligations.

9. Colorado's bad-faith conduct estops it from denying coverage. *Safeco Ins. Co.*, 823 P.2d 499, 506 (Wash. 1992); *Mutual of Enumclaw, Inc. Co. v. Dan Paulson Const., Inc.*, 169 P.3d 1, 10 (Wash. 2007).

10. Colorado's bad-faith actions during the settlement process also constitute a violation of Washington's Consumer Protection Act ("CPA") because the conduct meets the five required elements of a CPA claim. *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (1986). Colorado's conduct was an unfair or deceptive act or practice, *see* Wash. Admin. Code § 284-30-330, occurring in "trade or commerce," *see Salois v. Mutual of Omaha Ins. Co.*, 581 P.2d 1349, 1352 (1978), that affected the public interest, *see* Wash. Rev. Code § 48.01.030, and forced Starline into consenting to judgment against it as trial approached.

D. Colorado's Defenses

11. Colorado did not show that Starline breached the cooperation and subrogation clauses of the Colorado Policies, because Colorado's bad-faith actions excused Starline from those clauses. Neither did Colorado meet its burden of demonstrating that it was actually and substantially prejudiced by Starline's settlement.

12. Colorado did not prove that Starline assumed liability under the Warranty. Instead, the evidence showed that Starline's liability under the Warranty was primary. Starline issued the Warranty, which was a generic form of warranty, and it performed obligations under the Warranty for nearly a decade. All relevant parties treated Starline as the relevant entity under the Warranty. Moreover, the Warranty was not the only source of Starline's liability in the Bristol lawsuit.

## III. CONCLUSION

13. Defendants are entitled to judgment against Colorado in the principal amount of $3,225,000.00, plus CPA treble damages in the amount of $25,000.

14. Because the amount of $3,225,000.00 was not deemed reasonable by the state court, there was no basis for calculating any amount due with exactness until now. The Court therefore concludes that it was not a liquidated sum as of May 2013 and awards no prejudgment interest.

15. Defendants are also entitled to award of their attorney and expert fees and costs against Colorado under *Olympic S.S. Co., Inc. v. Centennial Ins. Co.*, 811 P.2d 673 (1991) and *Panorama Village Owners Ass'n v. Allstate Inc. Co.*, 26 P.3d 910 (144-45) (2001), in an amount to be determined by the Court upon application for same by Defendants.

DATED this 27th day of May 2014.

*[signature]*

John C. Coughenour
UNITED STATES DISTRICT JUDGE